UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOSEPH ALLEN LAYNE,                    )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        No. 1:22-CV-194-DCP
                                       )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
            Defendant.                 )

## <u>**MEMORANDUM OPINION**</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13].  Now before the Court are Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 21].  Joseph Layne ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On October 16, 2019, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on June 2, 2019 [Tr. 71].  After his application was denied initially [*id.* at 57–70] and upon reconsideration [*id.* at 72–87], Plaintiff requested a hearing before an ALJ [*id.* at 106].  A telephonic administrative hearing on May 13, 2021 [*Id.* at 35–56].  On May 26, 2021, the ALJ found that Plaintiff was not disabled [*Id.* at 13–29].  The Appeals Council subsequently denied Plaintiff's request for review on May 23, 2022 [*id.* at 1–7], making the ALJ's

decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 21, 2022, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since October 16, 2019, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: cervical degenerative disc disease, obesity, schizoaffective disorder, and depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds; can have no exposure to workplace hazards; can understand, remember, and carry out simple, routine tasks; can maintain concentration, persistence, and pace for those tasks with customary work breaks; can have no contact with the public and occasional contact with coworkers and supervisor but should not perform team tasks; and can adapt to gradual and infrequent change.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on November 13, 1975, and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills

2

(See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 16, 2019, the date the application was filed (20 CFR 416.920(g)).

[Tr. 18–29].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

3

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

IV.     **DISABILITY ELIGIBILITY**

"Disability" means an individual cannot "engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his

5

limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff argues that "[t]he ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinions of [consultative examiners] David J. Caye, M.S. and John B. Judd, Ph.D." ("Caye-Judd opinion")[1] [Doc. 16 p. 1]. Plaintiff argues that the ALJ erred in declining to adopt the more restrictive limitations in the opinion, including the limitations regarding Plaintiff's ability to interact with coworkers and supervisors and adapt to change, and that the ALJ's error was harmful in light of the vocational expert's testimony [*Id.* at 10–18]. The Commissioner responds that the ALJ properly evaluated the Caye-Judd opinion under the applicable regulations and her decision to discount the consultative examiners' more extreme limitations is supported by substantial evidence [Doc. 22 pp. 6–14]. For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards in evaluating the Caye-Judd opinion and that her evaluation of the opinion is supported by substantial evidence.

---

[1] On February 19, 2020, David J. Caye, M.S., authored a psychological consultative examination opinion based on his examination of Plaintiff and a review of Plaintiff's treatment records [Tr. 1010–13], and then, John B. Judd, Ph.D. "reviewed" the opinion and "concur[red] with its findings" [*Id.* at 1013] by signature. Given there is only one written opinion, and for ease of reference, this will be referred to as the "Caye-Judd opinion."

## A. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant medical and other evidence, including medical opinion evidence. 20 C.F.R. § 404.1520(e). As of March 27, 2017,[2] an ALJ must "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors,[3] the most important of which are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). The ALJs are required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2). As to the supportability factor, section 404.1520c(c)(1) states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). As for the consistency factor, section 404.1520c(c)(2) states, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and

---

[2]    For claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depended on whether the opinion was from "non-examining sources; examining but non-treating sources; [or] treating sources." *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527). Under the prior regulations, "a treating physician's opinion [was] due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* This was known as the "treating physician" rule. *Id.*

[3]    The five factors include the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c).

nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement," *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.), "[d]istrict courts applying the [] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, by requiring the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

If the ALJ applied the correct legal standards in evaluating the relevant medical opinions by sufficiently articulating the supportability and consistency factors, this Court's review is otherwise limited to whether the ALJ's evaluations are supported by substantial evidence. *See Mercado v. Kijakazi*, No. 1:21-CV-365, 2022 WL 4357484, at *18 (M.D. Penn. Sept. 20, 2022) ("The ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can

8

demand in a disability proceeding.").

**B.      The ALJ's Evaluation of the Caye-Judd Opinion**

In this case, Plaintiff argues that the ALJ's RFC determination in not supported by substantial evidence because the ALJ failed to apply the correct legal standards in evaluating the Caye-Judd opinion and because her conclusion that the opinion was unpersuasive is not supported by substantial evidence [Doc. 16 p. 1]. The Caye-Judd opinion was issued on February 19, 2020, and in that opinion, Mr. Caye detailed the materials he received prior to the evaluation, the tests he performed, his behavioral observations, and information regarding Plaintiff's medications, presenting problems, background information, and daily activities [Tr. 1010–13]. The opinion then lists the following "Diagnostic Impressions": "Alcohol use disorder – severe. [Plaintiff] reported in full sustained remission"; "Rule out borderline intellectual functioning"; "Bipolar disorder, mild to moderate by history"; and "Generalized anxiety disorder – mild to moderate" [*Id.* at 1012]. The opinion then concludes by stating,

> In summary, this 44.2 years old male presents with a history of bipolar disorder, anxiety and hallucinations. Psychotic material was absent during the entire evaluation. Paranoid material not noted. Suspiciousness absent, eye contact adequate without glare and suspiciousness absent. There was evidence of a depressed state. General sadness present, no smiling noted in little in the way of social communication. Interests, activities, and social contacts appeared to be falling somewhat below age appropriateness and that limited to the family unit. Major depressive disorder, recurrent, mild to moderate was suggested that the borderline bipolar disorder can be during a mere extension of his depressed state. He put forth appropriate effort in findings of his assessment felt to be a valid reflection of his functioning level. He has history of extreme alcohol use reportedly in full sustained remission.

> If eligible for benefits it is felt that Mr. Layne is capable of managing his own financial affairs.

> Regarding Mr. Layne's ability to function in a work setting, from a mental health standpoint, his ability to understand, concentrate, and recall on simple tasks is seen as not restricted. His ability to understand, concentrate, and recall on complex tasks

9

is seen as moderately restricted. Social interaction pattern with peers are seen as moderately restricted, anticipate to moderately to markedly restricted with co-workers and supervisors. Problem solving skills appeared moderately restricted and adaptation is moderately to markedly restricted.

[*Id.* at 1012–13].

The ALJ, in turn, evaluated the Caye-Judd opinion as part of her RFC determination [*Id.* at 23–24]. The ALJ began by extensively summarizing the information contained within the opinion [*Id.* (detailing the opinion's examination findings, diagnostic impressions, and opined limitations)]. The ALJ then stated:

I find the opinion of Mr. Caye and Dr. Judd (Exhibit 7F) to be unpersuasive. The report contains contradictions, such as the indication that borderline intellectual functioning was ruled out yet providing it as a rule-out diagnosis. The claimant denied any anxiety symptoms, yet he was diagnosed with mild to moderate generalized anxiety disorder. The medical evidence does note some psychiatric hospitalizations. However, the claimant reported improvement in 2018 and 2019, indicating that he was sober, working, started going to church, and had supportive parents. The treatment after this time appears focused on the claimant's inability to stay asleep, and the claimant went to the crisis stabilization unit in late 2020 for an adjustment of medications (Exhibit 12F). The claimant had a voluntary psychiatric hospitalization in February 2021, in which he stated he could not work due to his history of DUIs. The claimant reported improvement with adjustment in medications and was assessed with normal memory and concentration abilities at discharge (Exhibit 14F).

[*Id.* at 24].

On appeal, Plaintiff argues that "the ALJ's analysis does not comport with the mandates of the regulations or the well-traveled authority in this Circuit" [Doc. 16 p. 12], and that "[a] decision predicated on legal error cannot be based on substantial evidence and necessitates remand" [*id.* at 17 (citation omitted)]. Specifically, Plaintiff argues that the ALJ committed legal error by failing to adequately address the evidence in the record that supports the Caye-Judd opinion and to explain why such evidence was insufficient to find the opinion persuasive [*Id.* at 16–17]. Plaintiff also challenges the evidence the ALJ did rely on, arguing that such evidence was insufficient to provide

10

support for the ALJ's decision to discount the Caye-Judd opinion, especially in light of the other evidence in the record [*Id.* at 14–15]. In response, the Commissioner argues that the ALJ did apply the correct legal standards to the extent the ALJ adequately articulated the consistency and supportability factors in evaluating the Caye-Judd opinion, and that her conclusion that the opinion was unpersuasive—especially as to the more-restrictive mental limitations contained in the opinion—was supported by substantial evidence [Doc. 22 pp. 4–14].

For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards in evaluating the Caye-Judd opinion and that her evaluation of the opinion is supported by substantial evidence.

### 1. The ALJ Applied the Correct Legal Standards in Evaluating the Caye-Judd Opinion

While Plaintiff argues that the ALJ's rejection of the Caye-Judd opinion was the product of legal error, the majority of his arguments do not address whether the ALJ sufficiently articulated the consistency and supportability factors.[4] Rather, Plaintiff's main contention is that the ALJ's evaluation of the Caye-Judd opinion was the "product of legal error" because the ALJ failed to explain why "seemingly probative evidence" from the record "did not provide adequate support for the limitations identified in the [Caye-Judd opinion]" [*Id.* at 16–17]. More specifically, Plaintiff argues that the ALJ failed to explain why the evidence cited in the Caye-Judd opinion, as well as the evidence of Plaintiff's anxiety, was insufficient for the ALJ to find the Caye-Judd opinion persuasive [*Id.* at 13 (citing evidence from the record that "demonstrates that Plaintiff was

---

[4]    One argument Plaintiff makes that does appear to go directly to whether the ALJ properly articulated the supportability factor is his argument that while the ALJ noted the alleged inconsistencies in the consultative examiners' opinion regarding his intellectual functioning, the ALJ failed to explain how such inconsistencies led her to find the consultative examiners' opinion unpersuasive [Doc. 16 p. 12]. The Court will address this argument below.

11

treating for his anxiety" and stating an ALJ errs if they "mischaracterized the relevant treatment notes, overlooked or ignored contrary lines of evidence, or otherwise cherry-picked select portions of the record" (internal quotations and citation omitted)); *id.* at 15–16 (citing the findings from the Caye-Judd opinion and stating "the ALJ must explain why this seemingly probative evidence did not provide adequate support for the limitations identified in the Caye-Judd opinion")].

The Commissioner, in turn, argues that the ALJ applied the correct legal standards by adequately articulating both the supportability and consistency factors, as evidenced by both the statements she made when evaluating the persuasiveness of the Caye-Judd opinion as well as other portions of her decision in which she discussed the opinion [Doc. 22. pp. 6–11]. The Commissioner further argues that the ALJ did not ignore the relevant evidence, but instead detailed several of the relevant findings from the record, including some of the same evidence Plaintiff now cites on appeal [*Id.* at 11–13]. Upon review, the Court finds that the ALJ applied the correct legal standards in evaluating the Caye-Judd opinion as she sufficiently articulated both the consistency and supportability factors in explaining why she found the opinion unpersuasive. The Court finds that the ALJ also did not ignore contrary evidence in the record in analyzing the persuasiveness of the Caye-Judd opinion.

Turning first to whether the ALJ properly articulated the consistency and supportability factors set forth in 20 C.F.R. § 404.1520c(c), the Court finds that the ALJ sufficiently articulated both factors as evidenced by the ALJ's evaluation of the persuasiveness of the Caye-Judd opinion as part of her RFC determination as well as her earlier evaluation of the consultative examiners' opined limitations as part of her step-three listings analysis.

In evaluating the persuasiveness of the Caye-Judd opinion as part of her RFC determination, the ALJ made several statements regarding the extent to which "the evidence from

12

other medical sources and nonmedical sources in the claim" was consistent, or inconsistent, with

the Caye-Judd opinion. 20 C.F.R. § 404.1520(c)(2). Specifically, the ALJ stated,

> The medical evidence does note some psychiatric hospitalizations. However, the claimant reported improvement in 2018 and 2019, indicating that he was sober, working, started going to church, and had supportive parents. The treatment after this time appears focused on the claimant's inability to stay asleep, and the claimant went to the crisis stabilization unit in late 2020 for an adjustment of medications (Exhibit 12F). The claimant had a voluntary psychiatric hospitalization in February 2021, in which he stated he could not work due to his history of DUIs. The claimant reported improvement with adjustment in medications and was assessed with normal memory and concentration abilities at discharge (Exhibit 14F).

[Tr. 24].

The ALJ also made statements when evaluating the persuasiveness of the Caye-Judd

opinion that go towards the supportability factor and why the "objective medical evidence and

supporting explanations presented by" the consultative examiners did not "support [their] medical

opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Specifically, the ALJ stated that "[the Caye-Judd

opinion] contains contradictions, such as the indication that borderline intellectual functioning was

ruled out yet providing it as a rule-out diagnosis," and that "[t]he claimant denied any anxiety

symptoms, yet he was diagnosed with mild to moderate generalized anxiety disorder" [Tr. 24].

While Plaintiff challenges the ALJ's reference to the inconsistencies in the Caye-Judd

opinion regarding his intellectual functioning, arguing that the ALJ failed to bridge any

inconsistencies in the opinion to her conclusion that the opinion was unpersuasive, this was not

the only statement the ALJ made regarding the supportability of the opinion. As just noted, the

ALJ also cited the fact that the claimant denied any anxiety-related symptoms but was diagnosed

by the consultative examiners as having mild to moderate anxiety. In addition, the ALJ made

several other findings addressing the supportability—as well as the consistency—of the Caye-Judd

opinion earlier in her decision when analyzing whether Plaintiff's mental impairments met or

medically equaled a listed impairment [Tr. 19–21]. In this earlier portion of her analysis, the ALJ noted each of the opined work-related limitations contained in the Caye-Judd opinion, made her own findings as to the extent to which Plaintiff was restricted in each of these areas, and supported her findings with references to evidence from both the Caye-Judd opinion and other portions of the record [*Id.*]. For example, the ALJ noted that the consultative examiners opined that Plaintiff was moderately to markedly limited in his ability to interact with coworkers and supervisors, whereas she found that Plaintiff had only moderate limitations in interacting with others [*Id.* at 20 (citing Exh. 7F)]. In reaching her conclusion, the ALJ cited evidence from Plaintiff's function reports that he did not have difficulty getting along with others, had not been fired from a job due to an inability to get along with others, went to church regularly, and drove places with others [*Id.* (citing Exhs. 8E & 9E)]. The ALJ also cited evidence from the Caye-Judd opinion, including that Plaintiff "stated he spent time interacting with family. . . . spoke to his grandmother for several hours daily and visited his mother and father, and occasionally his brother visited. . . . [and] went shopping and attended church services" [*Id.* (citing Exh. 7F)].[5]

The Court finds that by citing the Caye-Judd findings, stating how her findings differed, and articulating the evidence from both the record and the Caye-Judd opinion that contradicted the examiners' findings and supported her findings, the ALJ sufficiently articulated both the

---

[5] The ALJ performed a similar analysis in analyzing Plaintiff's ability to adapt and manage himself. The ALJ noted that "[the consultative examiners] found his problem solving skills to be moderately restricted and his adaptation to be markedly restricted," whereas she found Plaintiff "has experienced a moderate limitation" in adapting or managing himself [Tr. 20]. The ALJ relied on the fact that "[Plaintiff] stated in one Function Report that he handled stress and routine changes well, but stated in another Function Report that he did not" [*Id.* (citing Exhs. 8E & 9E)]. The ALJ also cited the consultative examiners' findings that "[Plaintiff] told [the consultative examiner] that he became angry at times and used profanity and had been known to throw items. . . . had attempted suicide twice . . . denied plan or intent of self-harm at the present time. . . . [and] had past extreme use of alcohol, but indicated he had not used in a couple years" [*Id.*].

14

consistency and supportability factors. *See* 20 C.F.R. § 404.1520c(c)(1)–(2); *see also Blevins v. Comm'r of Soc. Sec.*, No. 1:21-cv-00142-SKL, 2022 WL 1217235, at \*7 (E.D. Tenn. Apr. 25, 2022) ("Elsewhere in the decision, the ALJ discussed findings and notations in Plaintiff's medical record that further undermine the supportability of Dr. Ziegler's opinion, and which reflect that the ALJ performed the requisite consistency analysis."); *White v. Comm'r of Soc. Sec.,* No. 1:21-CV-00864-JDG, 2022 WL 2105977, at \*11 (N.D. Ohio June 10, 2022) ("Reading the opinion as a whole, it is evident to the Court the ALJ rejected Dr. Saghafi's lifting and standing/walking limitations on the basis of conflicting evidence . . . ."); *Alexander v Kijakazi,* No. 1:20-CV-01549, 2021 WL 4459700, at \*12 (N.D. Ohio Sept. 29, 2021) ("[T]he decision as a whole sufficiently explains why [the medical] opinions were found to be lacking in consistency.").

As noted above, Plaintiff's main contention as to why the ALJ failed to apply the correct legal standards does not focus on whether the ALJ sufficiently articulated the consistency and supportability factors[6] but whether the ALJ erred by ignoring the record evidence that supported the consultative examiners' opinion. Contrary to Plaintiff's contentions, the Court finds that the ALJ did properly consider the record as a whole in evaluating the Caye-Judd opinion.

As an initial matter, the Court notes that Plaintiff relies on the Sixth Circuit's opinion in *Gayheart* to argue that when an "ALJ discounts opinions from a physician due to alleged lack of consistency with treatment notes, but fails to mention treatment notes that lend significant support

---

[6]     Plaintiff challenges the evidence the ALJ relied on in articulating the consistency and supportability factors, including the ALJ's reliance on Plaintiff's statements about his anxiety and his improvement with medication. Plaintiff's challenges, however, go towards whether such evidence is sufficient to support the ALJ's conclusion that the Caye-Judd opinion was unpersuasive rather than whether the ALJ's statements about the evidence are sufficient to show the ALJ articulated the supportability and consistency factors. To the extent Plaintiff challenges the sufficiency of the evidence the ALJ relied on in reaching her conclusion about the opinion, the Court will analyze such challenges below under the substantial evidence standard.

15

to those opinions, some explanation should have been given for ignoring those portions of the record" [Doc. 16 pp. 16–17 (citing *Gayheart*, 710 F.3d at 378–79)].  The Sixth Circuit's opinion in *Gayheart* is distinguishable, however, as the applicable regulations in that case were the prior regulations that required the ALJ to articulate "good reasons" for discounting a treating physician's opinion.  *See Gayheart*, 710 F.3d at 378 (finding the ALJ erred under the prior regulations that require the ALJ to give "good reasons" for discounting a treating physician's opinion).  In contrast, "the new standards are less stringent in their requirements for the treatment of medical opinions." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021); *see also Gregory R. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1817, 2022 WL 1485277, at *2 (S.D. Ohio May 11, 2022) ("Given *Gayheart* was decided under the old regulatory framework, Plaintiff's reliance on it to argue the ALJ errored in considering Dr. Shrek's medical opinions is not persuasive.").  Furthermore, the consultative examiners were not treating sources, meaning that even under the old regulations the treating physician rule would not apply to their opinion.  *See Gayheart*, 710 F.3d at 376 ("[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'").

At the same time, "[while] the new standards are less stringent . . . they still require that the ALJ provide a coherent explanation" and "if relevant evidence is not mentioned, the Court cannot discern whether the ALJ discounted or overlooked the evidence."  *White*, 2021 WL 858662, at *15, *21 (citations omitted).  Here, however, the ALJ mentioned the relevant evidence, including much of the same evidence Plaintiff cites to on appeal.  For example, Plaintiff lists a litany of findings from the Caye-Judd opinion [Doc. 16 pp. 15–16 (listing the findings that Plaintiff had a history of bipolar disorder, anxiety, and hallucinatory behavior; used profanity when angry and reported two suicide attempts; was known to throw and break things; had extreme prior alcohol

16

use that was in remission; was treated on an inpatient basis for suicidal behaviors; and had intellectual functioning at the lower ranges of ability (citing Tr. 1010–13))]. The ALJ included these same findings in the narrative discussion of the Caye-Judd opinion, immediately prior to her evaluation of the persuasiveness of their opinion [Tr. 23–24 (detailing the examiners' findings that Plaintiff had a history of bipolar disorder and anxiety, reported seeing lights that looked like bubbles, reported being depressed sometimes and angry sometimes; had attempted suicide twice; had reported extreme alcohol use; and was estimated to have intellectual functioning at the lower range" (citing Exh. 7F))].

The ALJ's decision also references many of the same portions of the record that Plaintiff argues demonstrate that he was being treated for his anxiety [*Compare* Doc. 16 p. 13 (citing Plaintiff's May 2013 suicide attempt; that his mother reported he had anxiety attacks and was not sleeping well; that in December 2017 he reported struggling with depression and that his medication was not helping his anxiety; that he was noted to have anxiety in 2018 during treatment; that it was determined in June 2018 he had an anxiety attack; and that his case manager discussed that anxiety had held him back (citing Tr. 350, 360, 364, 564, 932, 936, 947, 1689)), *with* Tr. 24 (noting Plaintiff's hospitalization on May 28, 2013, following his attempted suicide, at which time his mother stated he had bad anxiety attacks and had not been sleeping well), *id.* at 25 (noting that Plaintiff was hospitalized on December 14, 2017, for mood swings and depression), *id.* at 25 (noting Plaintiff had intermittent treatment and contact with providers and was assessed with unspecified schizophrenia and other psychotic disorders"), *and id.* at 27 (detailing several of the treatment notes from Plaintiff's outpatient treatment with his case manager)]. While the ALJ's decision does not reference Plaintiff's 2018 anxiety attack diagnosis or his statement to his case manager that his anxiety still held him back [Tr. 364, 1689], these omissions alone do not indicate

17

that the ALJ failed to consider the record as a whole, especially since the ALJ considered Plaintiff's treatment notes with his case manager. *See Blevins*, 2022 WL 1217235, at *8 ("[T]he ALJ is not required to discuss all of the relevant evidence in the record, so long as they consider the evidence as a whole and reach a reasoned conclusion" (internal quotations omitted)).[7]

As the ALJ cited much of the same evidence the ALJ cites on appeal, the Court finds that the ALJ considered the record as a whole and did not otherwise "overlook[] or ignore[] contrary lines of evidence, or [] cherry-pick[] select portions of the record." *Blevins*, 2022 WL 1217235, at *8; *see also White*, 572 F.3d at 284 ("But we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). The Court therefore finds that the ALJ applied the correct legal standards in evaluating the Caye-Judd opinion as she sufficiently articulated both the supportability and consistency factors and properly considered the record as a whole in reaching her conclusion.

### 2. The ALJ's Evaluation of the Caye-Judd Opinion is Supported by Substantial Evidence

Having found the ALJ applied the correct legal standards in evaluating the Caye-Judd opinion, the Court's review is otherwise limited to determining whether the ALJ's evaluation is

---

[7] To the extent Plaintiff argues that the ALJ's statement, "[Plaintiff] denied any anxiety symptoms, yet he was diagnosed with mild to moderate generalized anxiety disorder" [Tr. 24], was "a mischaracterization of the evidence" for any reason other than that there is evidence in the record the ALJ did not consider [Doc. 16 p. 13], the Court finds such argument unpersuasive as the examiners' report stated:

> Anxiety was given as that is what the doctor said.[] [Plaintiff] described himself as being asymptomatic. Cognitive functioning was reported to be stable. Sleep is reported to be erratic at 3 to 4 hours nightly and some nights four to five additional hours obtain. Appetite was given as stable, weighing 250 pounds one year ago and now weighing 265 pounds.

[Tr. 1011].

supported by substantial evidence. As noted previously, Plaintiff challenges the ALJ's reliance on certain portions of the record in finding the Caye-Judd opinion unpersuasive. Specifically, Plaintiff challenges the ALJ's reliance on the fact that he denied having any anxiety-related symptoms at the time of his examination [Doc. 16 p. 14 (citations omitted)]. Plaintiff also challenges the ALJ's reliance on his improvement with medication at times [*Id.* at 14–15 (citations omitted)]. Contrary to Plaintiff's assertions, the Court finds that substantial evidence supports the ALJ's finding that the Caye-Judd opinion was unpersuasive.

### a. Plaintiff's Denial of Anxiety-Related Symptoms

Plaintiff argues that the ALJ erred in relying on the fact that Plaintiff denied having anxiety-related symptoms at the time of his examination because "for some disorders, the failure of an individual to understand the nature of his own impairments and the need for treatment is 'simply another symptoms of the disorder itself,'" and "it is 'questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'" [*Id.* at 14 (first quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009); then quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)]. *White* and *Nguyen* are distinguishable, however, as the issue before the court in those cases was whether the ALJ could rely on a claimant's lack of mental-health treatment as a basis for discounting their symptoms or diagnoses. *See White*, 572 F.3d at 283 ("We recognize that ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."); *Nguyen*, 100 F.3d at 1465 ("[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate.").

19

Here, in contrast, the ALJ found the Caye-Judd opinion regarding Plaintiff's anxiety diagnosis was unpersuasive because despite Plaintiff denying having anxiety-related symptoms at the examination, he was diagnosed with mild to moderate generalized anxiety disorder. Plaintiff's denial of symptoms, in turn, was a relevant factor for the ALJ to consider and provided substantial evidence for her finding that the opinion was unpersuasive. *See Rogers v. Comm'r Soc. Sec.*, No. 1:16-cv-1245, 2017 WL 3381162, at * (W.D. Mich. Aug. 7, 2017) (finding "[t]he ALJ properly found [the plaintiff's treatment] records were inconsistent with the extreme restrictions offered by [the treating physician]" as "Plaintiff expressly denied experiencing the symptoms the doctor would later mark on his opinion," including those symptoms related to the plaintiff's depression and anxiety); *Patrice P. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5920, 2022 WL 17842946, at *6 (S.D. Ohio Dec. 22, 2022) (finding the ALJ's conclusion that the state agency psychologists opinions were unpersuasive was supported by substantial evidence in part because the claimant "denied psychological symptoms during her subsequent office visits").

**b.    Plaintiff's Improvement with Medication**

Plaintiff also argues that the ALJ erred in citing to his periods of improvement with medication [Doc. 16 pp. 14–15]. In discussing the persuasiveness of the Caye-Judd opinion, the ALJ stated,

> The medical evidence does note some psychiatric hospitalizations. However, the claimant reported improvement in 2018 and 2019, indicating that he was sober, working, started going to church, and had supportive parents. The treatment after this time appears focused on the claimant's inability to stay asleep, and the claimant went to the crisis stabilization unit in late 2020 for an adjustment of medications (Exhibit 12F). The claimant had a voluntary psychiatric hospitalization in February 2021, in which he stated he could not work due to his history of DUIs. The claimant reported improvement with adjustment in medications and was assessed with normal memory and concentration abilities at discharge (Exhibit 14F).

[Tr. 24].

20

Plaintiff argues that "despite periods of improvement, this evidence, alone, does not demonstrate that Plaintiff retained the ability to engage in sustained work activity on a regular and continuing basis" [Doc. 16 p. 14]. Plaintiff notes he "has been diagnosed with bipolar disorder" and that "[c]ourts in this Circuit have recognized that '[p]eople with bipolar disorder experience unusually intense emotional states that occur in distinct periods called "mood episodes" and are apt to have "better days and worse days"'" [*Id.* (citing *Pierson v. Colvin*, No. 3:13CV00319, 2015 WL 418079, at *6 (S.D. Ohio Jan. 30, 2015), *report and recommendation adopted*, 2015 WL 1290903 (S.D. Ohio Mar. 18, 2015))]. Plaintiff submits that while he "may have experienced periods of improvement and stability," his "so-called periods of improvement were interspersed with hospitalizations due to overwhelming symptoms and suicidal ideology including a preoccupation with shooting himself again despite ongoing treatment and therapy . . . and weekly contacts with his case manager" [*Id.* at 15 (citing Tr. 350–55, 360, 1150, 1594, 1625–28)].

The Court finds that the ALJ did not err in relying in part on Plaintiff's improvement with medication at times to discount the Caye-Judd opinion. Unlike *Pierson*, the ALJ in this case did not rely solely on such periods of improvement while ignoring contrary evidence from the record. *See Pierson*, 2015 WL 418079, at *5–6 (finding the ALJ erred by "improperly concentrat[ing] on the occasions of [the plaintiff's] improved symptoms" while ignoring evidence of "extensive treatment with prescription medications and [a] diagnosis of bipolar disorder" as the ALJ appeared to have "a misunderstanding of the fluctuating symptoms . . . [of] bipolar disorder"). Rather, the ALJ's citations to Plaintiff's periods of improvements with medication are couched within a more fulsome discussion of Plaintiff's mental health treatment over time. Specifically, in discussing Plaintiff's periods of improvement, the ALJ also references Plaintiff's "prior psychiatric hospitalizations," the fact that "[Plaintiff] went to [a] crisis stabilization unit it late 2020 for an

21

adjustment of medications" and that Plaintiff "had a voluntary psychiatric hospitalization in February 2021 [Tr. 24 (citing Exhs. 12F & 14F)].

Notably, the psychiatric hospitalizations the ALJ referenced in her decision appear to be the same hospitalizations that Plaintiff argues on appeal were interspersed with his periods of improvement [*Compare* Doc. 16 p. 14 (arguing his "so-called periods of improvement were interspersed with hospitalizations due to overwhelming symptoms and suicidal ideology including a preoccupation with shooting himself again despite ongoing treatment and therapy" (citing Tr. 350–55, 360, 1150, 1594, 1625–28)), *with* Tr. 350–55 (detailing a hospitalization at Moccasin Bend Mental Health Institute in 2013 following a suicide attempt); *id.* at 1150 (noting that on November 18, 2022, Plaintiff presented to a crisis stabilization unit and stated he needed a medication adjustment); *id.* at 1398–99 (noting Plaintiff's discharge on December 23, 2017, from Valley Behavioral Health Services); *id.* at 1594 (stating Plaintiff was admitted to Parkridge Medical Center on December 15, 2017, for "mood swings"); *id.* at 1625–28 (noting Plaintiff's discharge from Parkridge Medical Center on December 22, 2017)].

Because the ALJ considered Plaintiff's periods of improvement with medication within a more fulsome discussion of his entire mental health history, the Court finds no indication that the ALJ "[misunderstood] the fluctuating symptoms . . . [of Plaintiff's] bipolar disorder." *Pierson*, 2015 WL 418079, at *5. Rather, the ALJ properly weighed all of the relevant evidence and appropriately relied in part on Plaintiff's improvement with medication to discount the Caye-Judd opinion. *See Johnson v. Comm'r of Soc. Sec.*, No. 9-CV-14899, 2011 WL 836802, at *9 (E. D. Mich. Feb. 4, 2011) (finding the ALJ properly discounted a medical opinion as "[t]he ALJ cited several instances where Plaintiff reported improvement with medication" and "concluded, the evidence demonstrates that her bipolar disorder and anxiety are effectively treated and controlled

22

with medication and the alcohol abuse is in partial remission").

### c.     Other Evidence in the Record

Throughout his brief, Plaintiff cites evidence from the record that he argues supports the Caye-Judd opinion.[8] As discussed above, Plaintiff cites such evidence to argue that the ALJ failed to apply the correct legal standards as set forth in the regulations to the extent she ignored such evidence or otherwise failed to explain why such evidence did not support the Caye-Judd opinion. To the extent Plaintiff also cites such evidence to argue the ALJ's evaluation of the Caye-Judd opinion was not supported by substantial evidence and that the record evidence instead supports a contrary conclusion, the Court finds such argument unpersuasive. "That there may be substantial evidence in the record to support another conclusion is irrelevant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997).[9] Rather, the question before the Court is whether substantial evidence supports the ALJ's decision. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotations omitted)).

---

[8]     Specifically, Plaintiff cites: (1) portions of the record regarding Plaintiff's anxiety to argue "the record demonstrates that Plaintiff was treating for his anxiety" [Doc. 16 p. 13 (citing Tr. 350, 360, 364, 564, 932, 936, 947, 1689)]; (2) portions of the record regarding Plaintiff's hospitalizations to argue his "so-called periods of improvement were interspersed with hospitalizations" [*id.* at 15 (citing Tr. 350–55, 360, 1150, 1398–99, 1594, 1625–28)]; and (3) findings from the Caye-Judd opinion to argue that "the [Caye-Judd] opinion is entirely consistent with Plaintiff's lengthy and ongoing treatment . . . . and is supported by the explanation and report proffered by the examiners" [*id.* (citing Tr. 1010–13)].

[9]     This is especially true to the extent, as detailed throughout this opinion, the ALJ relied on much of the same evidence that Plaintiff now cites on appeal for support. *See Bialek*, 2021 WL 2935249, at *3 ("The ALJ considered and discussed the very evidence on which Plaintiff relies. The Court cannot reweigh this evidence at this juncture." (citation omitted)).

23

Here, the Court finds that the ALJ's evaluation of the Caye-Judd opinion is supported by substantial evidence because the ALJ relied on several relevant factors in finding the opinion unpersuasive, including the inconsistencies in the opinion itself regarding Plaintiff's intellectual functioning, Plaintiff's denial of anxiety-related symptoms at the time of his consultative examination, and his improvements with medication at several points in time [Tr. 24]. Other portions of the ALJ's decision further evince that the ALJ's conclusion is supported by substantial evidence as the ALJ noted the examiners' opined limitations, but assessed lesser restrictions based on: (1) Plaintiff's statements from his functional reports [Tr. 20 (noting Plaintiff stated in his functional reports that he "was able to follow spoken and written instructions well," "did not have difficulty getting along with others and got along with authority figures," "[h]ad not been fired from a job due to an inability to get along with others," and "went to church regularly and visited with family")], (2) his testimony at the administrative hearing [*id.* at 21 (noting that Plaintiff "testified that he had anxiety and became nervous in crowds of around 10-15 people, but he did not know why")], (3) the consultative examiners' findings [*id.* at 20–21 (noting that the examiners' opinion stated that Plaintiff "was able to answer questions on topic," "spent time interacting with family" including speaking to his grandmother daily and visiting his mother and father, "went shopping and attended church services," "denied plan or intent of self-harm at the present time" despite two previous attempted suicides, and "had past extreme use of alcohol, but indicated he had not used in a couple of years")], and (4) his treatment records [*id.* at 20 (noting that Plaintiff was hospitalized in February 2021, at which time he reported worsening memory ability but, "at discharge, his . . . memory [was] found within normal limits," that during his hospitalization he attended group therapy, and that he "was pleasant, engaged, and conversational in his discharge assessment")].

24

In sum, the Court finds that the ALJ applied the correct legal standards in evaluating the Caye-Judd opinion and that the ALJ's conclusion that the opinion is unpersuasive is supported by substantial evidence.  Accordingly, the Court denies Plaintiff's sole basis for remand.[10]

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

**ORDER ACCORDINGLY.**

Debra C. Poplin
United States Magistrate Judge

---

[10]     Because the Court finds that the ALJ's evaluation of the Caye-Judd opinion applied the correct legal standards and is supported by substantial evidence, the Court finds it unnecessary to address Plaintiff's remaining argument that the ALJ's evaluation of the opinion was not harmless in light of the vocational expert's testimony [Doc. 16 p. 17–18].

25